### UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

IN RE:

MARIA C. WARE,

    Debtor.

_____/

CASE NO. 3:10-bk-00158-JAF
Chapter 11

### CREDITOR, COMMUNITY SOUTH BANK'S
### OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT

  Secured Creditor, Community South Bank ("CSB"), by and through undersigned counsel, and pursuant 11 U.S.C. §§ 1125, 1126, 1128 and 1129 and Bankruptcy Rule of Procedure 3018, hereby files its Objection to the Disclosure Statement filed by the Debtor, Maria C. Ware (the "Objection"), and in support thereof, states as follows:

### I. Overview

  1. CSB objects to the Debtor's, Maria C. Ware ("Debtor"), Disclosure Statement  which: (i) fails to reveal pre-bankruptcy transfers of assets commingling of funds, and other critical information; and (ii) fails to provide adequate information as to the proposed plan (which is not equitable or feasible).

  As to CSB, the proposed plan unilaterally values this creditor's collateral at $1,400,000.00, (b) unjustifiably restructures the Debtor's loan with CSB by decreasing the interest charged to 4.0% (well below the prevailing rate and stipulated rate under the loan documents); and (c) inexplicably extending the repayment period to 30 years.  Neither the Disclosure Statement nor the Plan meets the requirements set forth 11 U.S.C. §§ 1125 and1129 and otherwise under the Bankruptcy Code, and they should not be approved or confirmed[1].

---

[1] Nothing contained here shall be considered a waiver of Community South Bank's right to object to the Plan at a later date. Community South Bank reserves all objections to the proposed plan of the reorganization not limited to all objections as to treatment of this Creditors' claim therein.

**LIEBLER, GONZALEZ & PORTUONDO, P.A.**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130  (305) 379-0400

CASE NO. 3:10-bk-00158-JAF

## II. Loan

2.    On or about March 11, 2005, Lakewood Park Investments, Inc. ("Lakewood"), a Florida corporation executed and delivered a Promissory Note and Loan Agreement evidencing a loan in the principal sum of $1,662,000.00 (collectively the "Loan Agreement") in favor of CSB.  A true and correct copy of the Note and the Loan Agreement are attached hereto as Composite Exhibit "A" and incorporated by reference herein.  Lakewood is a Florida corporation wholly owned by the Debtor.

3.    Pursuant to the terms of the Loan Agreement and additional loan documents, Lakewood did not have the right to assign its rights thereunder or any collateral "without prior written consent of [CSB]."  *See* Loan Agreement at Page 10.

4.    As security for the sum advanced pursuant to the terms of the Loan Agreement, also on March 11, 2005, Lakewood executed and delivered a Florida Real Estate Mortgage, Assignment of Leases and Rents and Security Agreement (collectively, the "Mortgage") to CSB.  The Mortgage constitutes a first priority lien on the Property described therein, commonly known as 1220 Jimmy Ann Drive, Daytona Beach, Florida 32117, Folio # 02-15-32-00-00-0825 (the "Property").  The Mortgage was recorded on March 23, 2005, in the Official Records Book 5516 at Page 3593 of the Public Records of Volusia County, Florida.  A true and correct copy of the Mortgage is attached hereto as Exhibit "B" and incorporated fully herein by reference.

5.    As further security for the sums advanced pursuant to the terms of the Loan Agreement and the Mortgage, also on March 11, 2005, Lakewood executed and delivered a Security Agreement in favor of CSB (the "Security Agreement").  Pursuant to the terms of the Security Agreement, CSB has a secured interest in all of Lakewood's right, title and interest to the "Collateral" as defined therein, which includes, but it's not limited to "[a]ll Accounts and Chattel Paper, all Equipment, All

– 2 –

Inventory, All Fixtures, All General intangibles, All funds on deposit with or under the control of the Secured Party or its agents or correspondents, and All parts, replacements, substitutions, accessions, profits, products and cash and non-cash proceeds of any of the foregoing (including insurance proceeds payable by reason of loss or damage thereto) in any for or wherever located." A true and correct copy of the Security Agreement is attached hereto as Exhibit "C" and incorporated fully herein by reference.

6.    On March 15, 2005, CSB perfected its security interest in the Collateral by filing a Uniform Commercial Code Financing Statement with the Florida Secured Transaction Registry (the "UCC Financing Statement"); which was assigned filing No. 200509193895. A true and correct copy of UCC Financing Statement documentation is attached hereto as Exhibit "D" and incorporated fully herein by reference.

7.    As further security for the repayment of the sums advanced pursuant to the terms of the Note and the Loan Agreement and as mandatory for funding of the loan, on March 11, 2005, the Debtor executed and delivered an Unconditional Guarantee (the "Guaranty"). A true and correct copy of the Guaranty is attached hereto as Exhibit "E" and incorporated fully herein by reference.

8.    The Loan Agreement, Mortgage, Security Agreement and UCC Financing Statement documentation are collectively referred to as the "Loan Documents."

9.    Upon information and belief, just days before filing the instant bankruptcy proceeding, on or about December 18, 2009, Lakewood (an entity which, upon information and belief, is owned solely by the Debtor, Maria Ware), **without prior written consent from CSB**, improperly transferred the Property to the Debtor, **without consideration**, by way of a Quit-Claim Deed recorded on December 28, 2009, at Official Records Book 6431 at Page 2334 of the Public Records of Volusia County. A

– 3 –

true and correct copy of the Quit-Claim Deed is attached hereto as Exhibit "F" and incorporated fully herein by reference.

10.  As of the Petition Date, the outstanding principal sum due under the Note and the Loan Agreement is $1,543,351.33, and the total amount owed to CSB pursuant to the Loan Documents is in excess of $1,550,000.00, in addition to post-petition late charges, interest and additional attorneys fees and costs pursuant to the Loan Documents.

### III. This Bankruptcy Proceeding

**A.     The Schedules**

11.  On January 12, 2010 (the "Petition Date"), the Debtor filed her petition for Bankruptcy protection pursuant to Chapter 11 of 11 U.S.C. § 101 et seq., which was assigned case No. 10-00158-JAF. [D.E. 1].

12.  The Debtor's Schedule "A" lists her fee simple interest in the Property with a scheduled value of $1,400,000.00.  *See* D.E. 1.

13.  Schedule "D" lists CSB as a secured creditor with respect to the Property with a total claim of $1,500,000.00.  *See* D.E. 1.

14.  The Debtor's Schedule "I" represents that the Debtor has a combined average monthly income of $3,467.76; Schedule "J" reflects the Debtor as having  average monthly expenditures of $4,785.00, or over $1,400 more than her claimed total monthly income.

15.  The Debtor's Schedule "A" also lists the Debtor's interest in four (4) additional pieces of real property, including a vacant lot.

**B.     The Plan and Disclosure Statement**

16.  On January 12, 2010, the Debtor filed her Chapter 11 Plan of Reorganization [D.E. 9] and Disclosure Statement Regarding the Plan of Reorganization [D.E. 10].

**LIEBLER, GONZALEZ & PORTUONDO, P.A.**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

17.  Pursuant to the Plan and Disclosure Statement, the reason for the Debtor filing Chapter 11 was to "deal with several mortgages on real properties owned by the Debtor…" *See* D.E. 10 at Page 5.

18.  Pursuant to the Disclosure Statement, the "payments and distributions under the Plan will be funded by [unspecified and unsubstantiated] income from rentals and/or wages." See D.E. 10 at Page 9.

19.  CSB is treated as Class 3 Impaired pursuant to the Plan and Disclosure Statement. *See* D.E. 9 at Page 3 and D.E. 10 at Page 8, respectively.

20.  The Plan proposes to value CSB's claim at $1,400,000.00 and proposes payment on a monthly basis for an <u>additional period of 30 year</u>s (despite the stipulated 25 year period under the 2005 Note and the remaining 20 years on this Note and Loan Agreement) plus accruing interest at 4% annually (**which is well below both the prevailing interest rate and stipulated rate of Prime plus 2.25% as provided for in the Note and Loan Agreement**)  See D.E. 9 at Page 4.

21.  Pursuant to the Plan, the Debtor will retain all real property.  Moreover, the Plan conclusorily discloses (without any supporting explanation) that the lien securing the Debtor's homestead property in favor of a separate Creditor shall be <u>treated as Class 2-Unimpaired</u>, and, unlike the amounts owing under the SBA government Loan at issue, will not be impaired by the Plan.  See D.E. 9 at Page 3.

22.  According to the Plan, the Debtor will make monthly payments to all real estate related creditors, in the aggregate sum of $7,808.00 (despite alleged schedule I monthly income of less than $3,500) in addition to the payments outside of the Plan to the Class 2 creditor (who will not be impaired).

**LIEBLER, GONZALEZ & PORTUONDO, P.A.**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

## III. Additional Objections

**A.      The Disclosure Statement Does Not Provide Adequate Information Pursuant to 11 U.S.C. §1125**

11 U.S.C. §1125 provides, among other things, as follows:

> (a) In this section-
> (1) "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records…that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need to include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity to creditors and other parties in interest, and the cost of providing additional information;
> (b) An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.

*See* 11 U.S.C. §1125.  The relevant case law under §1125 of the Bankruptcy Code has produced a list of factors, the disclosure of which may be mandatory, under the facts and circumstances of a particular case, to meet the statutory requirement of adequate information. *See In re Metrocraft Pub. Services, Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984).  Disclosure of all factors is not necessary in every case. *Id.* These factors provide a useful starting point for the Court's analysis of the adequacy of the disclosure statement. *Id.*  The factors include the following:

> (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectibility of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant

to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with affiliates.

*See Metrocraft Pub. Services*, 39 B.R. at 568 (Bankr. N.D. Ga. 1984).

The Disclosure Statement submitted by the Debtor does not provide adequate information to allow CSB or other creditors to make an informed decision with respect to the Plan. The Disclosure statement fails, *inter alia*, to provide information regarding several of the above factors, including: (a) an accurate description of the assets and their value; (b) the anticipated future of the Debtor (including specific sources and amounts of all anticipated income to fund the Plan); (c) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (d) the future management of the Debtor; and (e) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan.

In particular, the Debtor fails to provide any information as to how she will make plan payments of approximately $7,800.00 to the secured creditors (in addition to the monthly payment of about $3,142. owing to the "unimpaired" and secured Class 2 creditor being paid outside the Plan), when the current schedules reflect that she operates at a $1,300.00 deficit even based on only about $4,700. per month in expenses. Moreover, the disclosure statement incorporates a plan which will unilaterally alter CSB's Note terms to an interest well below the current interest rate and extend the repayment of the loan for more than 10 years from its original term under the applicable Note and Loan Agreement without providing CSB any information as to the basis for these calculations. Additionally, the Debtor does not explain what happened to CSB's security interest in personal property once the real property was improperly transferred from Lakewood. Hence the Debtor does not accurately provide, amongst other things, a description of the Debtor's assets and their value.

**LIEBLER, GONZALEZ & PORTUONDO, P.A.**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

In essence, the Disclosure Statement fails to provide most, if not all, of the requirements needed for creditors to intelligibly evaluate whether to accept the Plan and whether it is feasible. The Disclosure Statement fails to meet the requirements of 11 U.S.C. § 1125, and approved should be denied.

**B.      The Plan referenced in the Disclosure Statement Does Not Meet the Requirement of 11 U.S.C. § 1129 and the Debtor has failed to Adequately Inform Creditors How The Plan Will Be Funded.**

11 U.S.C. § 1129 provides, among other things, as follows:

> (a) The court shall confirm a plan <u>only</u> if all of the following requirements are met:
> (1) The plan complies with the applicable provisions of this title.
> (2) The proponent of the plan complies with the applicable provisions of this title.
> (3) The plan has been proposed in good faith and not by any means forbidden by law…
> (11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor under the plan, unless such liquidation or reorganization is proposed in the plan.

*See* 11 U.S.C. § 1129 (emphasis added).  Further, it is well established that "in order to confirm a plan of reorganization, a debtor has the burden of proof as to each element of § 1129(a) of the Bankruptcy Code. *In re Immenhausen Corp.*, 172 B.R. 343, 347 (Bankr. M.D. Fla. 1994).

Here, the Debtor has not satisfied all of the elements of §1129(a).  <u>The Debtor's Disclosure Statement fails to adequately inform the creditors how the Plan will be funded.</u>  The Debtor's Disclosure Statement and proposed Plan were not proposed in good faith the Debtor.  The Debtor has failed to disclose, *inter alia*, how she intends to fund a Plan which calls for monthly payments in excess of $7,000.00 to mortgagees (in addition to the monthly payment of about $3,142.00 being paid by the Debtor to the Class 2 "unimpaired" and secured claim as to a mortgage on her home) while the Debtor, as it is, has a monthly deficit of $1,300.00 based on only about $4,700. in alleged

monthly expenses (and monthly income less than $3,500.00). The Debtor fails to inform CSB, as well as the other creditors, how she will avoid an inevitable liquidation under the circumstances herein and how she has commingled personal and business assets prior to the bankruptcy filing (as disclosed at the Meeting(s) of creditors). This Court should deny approval of the Disclosure Statement.

i.      **The Disclosure Statement Fails To Inform Creditors Of Pre-Bankruptcy Transfers or To Explain The Actual Sources (And Amount From Each Source) for Funding of The Plan).**

The Debtor's Plan is not confirmable, as proposed. The Debtor's Disclosure Statement does not adequately explain the Plan's feasibility as it does not provide, *inter alia*, a precise explanation for the sources of the income (and amount from each source) needed to fund the Plan.

"In evaluating feasibility of proposed Chapter 11 plan, the bankruptcy court must consider earning power of [the] debtor, [her] capital structure, economic conditions of business, continuation of present [business], and efficiency of management in control of business after confirmation." *See Immenhausen*, 172 B.R. at 348 (Bankr. M.D. Fla. 1994).

The Debtor's schedules reflect that the Debtor lacks <u>sufficient</u> income to fund a plan (as stated above the Debtor operates at a deficit each month). Under the proposed Disclosure Statement and Plan, the Debtor is required to make monthly payments of approximately $7,808.00 to the impaired creditors with secured liens on real estate. The Debtor's Plan proposes to pay mortgagees in excess of $7,000 per month under the Plan (in addition to the approximate $3,400. monthly mortgage payment owing outside the proposed plan to the Class 2 unimpaired Creditor) while the Debtor operates at a $1,300.00 deficit each month (based on only about $4,800 in alleged present monthly expenses).Yet, the Debtor's Plan does not provide an explanation for the source of the additional

LIEBLER, GONZALEZ & PORTUONDO, P.A.
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130  (305) 379-0400

monies required to fund the Plan.  In fact, the Disclosure Statement merely states that the Plan will be "funded by income from rentals and/or wages".

10.  Furthermore, the Debtor has not disclosed or provided the creditors with any supporting documentation (i.e. projected cash flow analysis) to reflect the actual source of these funds.  As such, the Debtor has not met her burden, and approval of the Disclosure Statement should be denied.

ii.  <u>**The Disclosure Statement and Plan Were Not Proposed in Good Faith**</u>

The Plan was not proposed in good faith. Shortly prior (i.e., less than 1 month) to filing for relief under the Bankruptcy Code, the Debtor transferred the Collateral Property of a wholly owned corporation to her name without any real consideration and without a proper accounting for what assets were transferred. Additionally, the Plan attempts to unilaterally restructure CSB's claim to terms which are not only prejudicial, as well as inequitable and contrary to interest rates agreed upon, but also unrealistic.

"In considering confirmation of a Plan of Reorganization, the threshold question is whether or not the Plan was proposed in good faith, § 1129(a)(3) and the Court must make an independent determination of the good faith of the proponent of the Plan." *Immenhausen*, 172 B.R. at 347 (Bankr. M.D. Fla. 1994) (finding that a plan was not confirmable where, among other reasons, the plan proposed to restructure a mortgage encumbering a distressed commercial property by an "<u>owner whose operating history, to say the least, is spotty and heavily clouded" by offering an</u> <u>annual interest rate of below market level and the plan was nothing but a visionary scheme and</u> <u>devoid of any valid and realistic basis</u>) (emphasis added).

Here, like in *Immenhausen*, the Debtor's proposed plan is devoid of any valid realistic basis and should not be confirmed.  As stated above, the Debtor does not meet her burden of proof with respect to the Plan's feasibility.  Further, the Debtor's unilateral restructuring of CSB's claim (i.e.,

**LIEBLER, GONZALEZ & PORTUONDO, P.A.**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

by attempting to add an additional 10 years onto the loan and pay interest at 4% rate for 30 years, rather than the variable prime rate plus 2.25% as stipulated under this 2005 SBA government Note and Loan, which provides for 20 more years) is unfounded and unrealistic. *See, i.e., Immenhausen*, 172 B.R. at 350 (Bankr. M.D. Fla. 1994)(Plan is not confirmable where the interest used by the Debtor is below market rate and for 30 years where the Debtor cannot afford to make payments to lender at market rate terms). Here, an interest rate of 4% for 30 years is considerably below market for any business loan and especially unwarranted for an at risk borrower like the Debtor. Moreover, as it is evident that the Debtor has not been able to prove the feasibility of the Plan and as proposed the Plan calls for the Debtor to operate at a monthly deficit in excess of several thousand dollars, the Plan has not been proposed in good faith. The Debtor cannot afford market level interest and principal payments to CSB and the Plan cannot be confirmed.

**C.     The Plan, as Proposed, is Not Fair and Equitable as to CSB as required by §1129(b)**

"The term fair and equitable is defined by § 1129(b)(2)(A) which provides that before the Court may find the Plan fair and equitable, the Plan must provide that a lender retain its lien, that the lender will receive property of the value equal to the allowed secured claim." *See Immenhausen*, 172 B.R. 343 (Bankr. M.D. Fla. 1994) ). Further, in deciding what the appropriate present value or what the market rate of interest should be for purposes of determining the Plan's fairness, the Court must consider market rate of interest with reference to similar terms, duration, collateral and risk to lender. *Id*.

Even if the Debtor properly valued all of the collateral of CSB and could afford to make the monthly payments to this Creditor (each of which is not the case), the Plan impermissibly calls for the Debtor, who for all purposes is an at risk borrower, to retain a marketable commercial property (assisted living facility) improperly transferred to her by the Borrower (i.e., her company) only a few

**LIEBLER, GONZALEZ & PORTUONDO, P.A.**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

CASE NO. 3:10-bk-00158-JAF

weeks prior to the bankruptcy filing. The Debtor lacks any basis for modifying the government (SBA) business loan owing to this Creditor to allow for a well below market interest rate and extended 30 year period for payments (fixed rate of 4% for 30 years, which is well below the stipulated prime plus 2.25% rate pursuant to the Note and additional 20 years of payments on this government business loan).

WHEREFORE, Creditor, Community South Bank, respectfully objects to the Debtor's proposed Disclosure Statement (**with CSB reserving all objections to the plan including but not limited to all plan objections set forth herei**n) and requests that this Court deny approval of the Debtor's Disclosure Statement and order such other relief deemed just and proper under the circumstances.

RESPECTFULLY SUBMITTED,
/s/ Dora F. Kaufman, Esq.
DORA F. KAUFMAN, ESQ.
Florida Bar No. 771244
LAUDY LUNA, ESQ.
Florida Bar No. 44544
dfk@lgplaw.com
Liebler, Gonzalez & Portuondo, P.A.
44 West Flagler Street
25th Floor
Miami, Florida 33130
Telephone: (305) 379-0400
Facsimile: (305) 379-9626
Attorneys for Creditor, *Community South Bank*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed via CM/ECF and served via Notice of Electronic filing to those parties registered to receive electronic filings, and

**LIEBLER, GONZALEZ & PORTUONDO, P.A.**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130  (305) 379-0400

CASE NO. 3:10-bk-00158-JAF

via U.S. Mail to all remaining parties on the attached Service List this 4th day of May, 2010, as

specified below.

/s/ Dora F. Kaufman
DORA F. KAUFMAN, ESQ.

Maria C. Ware
208 Zaharais Circle
Daytona Beach, FL 32124
(via U.S. mail)

Brett A. Mearkle, Esq.
Parker & Dufresne, P.A.
8777 San Jose Blvd., Suite 301
Jacksonville, Florida 32217
(via CM/ECF)

Timothy S. Laffredi
Office of the United States Trustee
U.S. Department of Justice
135 W. Central Blvd., Suite 620
Orlando, Florida 32801
(via CM/ECF)

Office of the United States Trustee
135 West Central Blvd., Suite 620
Orlando, Florida 32801
(via U.S. mail)

Larry M. Foyle, Esq.
Kass, Shuler, Solomon, Spector, Foyle & Singer,
P.A.
P.O. Box 800
Tampa, Florida 33601
(via CM/ECF)

LIEBLER, GONZALEZ & PORTUONDO, P.A.
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130  (305) 379-0400